# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

GEORGE M. COLEMAN,

                              Plaintiff,

          v.

PATRICK R. DONAHOE,
Postmaster General,

                              Defendant.          Case No. 3:11-cv-00006-SLG

## ORDER RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is an action for employment discrimination that George Coleman initiated in January 2011. Defendant Patrick R. Donahoe has moved for summary judgment on all claims that Mr. Coleman has brought against him.[1] The motion has been fully briefed by the parties[2] and oral argument was held in Anchorage on July 23, 2012.

## *FACTUAL BACKGROUND*

George Coleman is an African American male who was employed by the United States Postal Service ("USPS") for approximately thirty years. Mr. Donahoe is the Postmaster General of the USPS and is named in this action in his official capacity. In February 2008, Mr. Coleman, who had been in a management position, was demoted to a clerk position and assigned to the USPS' Muldoon Station location. Mr. Coleman's claims arise from the circumstances surrounding that demotion, his subsequent employment at the Muldoon Station, and his early retirement from the USPS in December 2008.

---

[1] Docket 25 (Mot.).

[2] Opp. (Docket 41); Reply (Docket 42).

The facts, presented in the light most favorable to the plaintiff for purposes of this summary judgment motion, are as follows: Mr. Coleman began working for the USPS as a clerk in October 1978 and was employed by that agency until December 31, 2008.[3] Mr. Coleman held several positions while at the USPS[4] and received multiple positive performance evaluations.[5] His last management position was as Manager of Statistical Programs (EAS-21), a position he held from 1997 until his demotion in February 2008.[6]

In approximately 1991, Mr. Coleman unsuccessfully applied for the position of Transportation Requirements Specialist (EAS-15).[7] He filed an EEO complaint at that time against two USPS employees involved in the selection process, alleging that the failure to hire him was discriminatory.[8] The USPS then offered Mr. Coleman another position to settle the dispute, which Mr. Coleman accepted.[9]

Between 2004 and 2007, Mr. Coleman was the subject of three EEO complaints that alleged he had engaged in inappropriate conduct toward women.[10] Two of these complaints may have arisen from the same incident[11] and Mr. Coleman alleges they

---

[3] Dep. of George M. Coleman at 10, Feb. 1, 2012 (Docket 25-1) [hereinafter Coleman Dep.].

[4] EEO Dep. of George M. Coleman at 14-16, Aug. 19, 2009 (Docket 25-2) [hereinafter EEO Dep.].

[5] *See, e.g.*, Evaluations (Docket 44, EEO File) [Bates #00058-69].

[6] EEO Dep. at 16; Coleman Dep. at 12; Opp. at 3, 15 (Docket 41). In some areas of the record, this position is referred to as Manager of CISCO Systems, which appears to be the result of a transcription error made by the reporter at Mr. Coleman's EEO deposition.

[7] Coleman Aff. No. 3 at 2 (Docket 37). *See also* EEO Dep. at 10-11.

[8] *Id.* at 2.

[9] *Id.* at 2-3.

[10] Coleman Dep. at 12-14, 83-84; Coleman Aff. No. 5 at 2 (Docket 39).

[11] Exs. T, U to Mot. (Docket 28-20, 28-21).

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 2 of 36

Case 3:11-cv-00006-SLG   Document 48   Filed 10/29/12   Page 2 of 36

were brought by an employee who was later fired for unrelated dishonesty.[12]  Mr. Coleman disputes the legitimacy of all three of these complaints, but only the most recent one appears to be directly relevant to this case.[13]

As a result of the last of these incidents, Mr. Coleman received a Notice of Proposed Removal from the USPS on December 28, 2007 informing him that his termination had been recommended.[14]  Mr. Coleman responded by filing an EEO complaint.[15]  On February 5, 2008, Mr. Coleman met with his supervisor in an effort to settle the dispute.[16]  Mr. Coleman's union representative attended the meeting with him.[17]

The parties reached a settlement at that meeting.  The terms of that settlement provided that the Notice of Proposed Removal would be converted to a "Final Written Warning in Lieu of Termination" and that Mr. Coleman would be demoted to a PS-05 position, with seniority "one day less than the junior unassigned regular" employee.[18]

After his demotion, Mr. Coleman worked as an unassigned regular employee at a PS-05 position at the Muldoon Station from February 2008 until he went on medical leave on August 4, 2008.  While employed at the Muldoon Station, Mr. Coleman has

---

[12] Ex. S to Mot. (Docket 25-22).

[13] Opp. at 15 (Docket 41).

[14] Coleman Dep. at 15; Withdrawal of ELM 650 Appeal (Docket 44, EEO File) [Bates #00170].

[15] Investigative Summary at 11 and Ex. 2 (Docket 44, EEO file) [Bates #00016, 00503-504].

[16] Opp. at 2 (Docket 41).

[17] Formal Compl. at 4 (Docket 44, EEO file) [Bates # 00038].

[18] Settlement Agreement (Docket 44, EEO file) [Bates #00507-508].

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 3 of 36

Case 3:11-cv-00006-SLG   Document 48   Filed 10/29/12   Page 3 of 36

testified that postal management made him exceed his physical work restrictions, forced him to sort mail without assistance, required him to travel from station to station during the workday, micromanaged his work, and assigned him allegedly humiliating duties.[19]

In April 2008, Mr. Coleman applied for the position of Retail Specialist at a level EAS-16.[20] Mr. Coleman was interviewed for this position.[21] He was informed by a letter dated July 16, 2008 that he had not been selected.[22] The position was awarded to a white male.[23]

On July 1, 2008, Mr. Coleman applied for another position, a Small Business Specialist.[24] He was not selected for an interview for that position. Subsequently, a hiring freeze took effect and the position remained unfilled.[25]

On August 4, 2008, Mr. Coleman went on approved FMLA leave.[26] On August 8, 2008, Mr. Coleman received a document about a Voluntary Early Retirement Option

---

[19] Coleman Dep. at 56, 49-50, 66; Opp. at 11 (Docket 41); EEO Dep. at 67.

[20] Application (Docket 44, EEO file) [Bates #00115].

[21] Coleman Dep. at 71.

[22] Letter of July 16, 2008 (Docket 44, EEO file) [Bates #00072].

[23] Formal Compl. at 10 (Docket 44, EEO file) [Bates #00045]; Interview Questionnaire (Docket 44, EEO file) [Bates #00113].

[24] Coleman Dep. at 70; Opp. at 8 (Docket 41). Mr. Coleman has repeatedly asserted that he applied for one of two Small Business Specialist positions posted at the EAS-16 level. *See, e.g.*, Opp. at 18 (Docket 41). The Defendant refers to a single posting for an EAS-16 position and a single posting for an EAS-18 position. Mot. at 6, n.3 (Docket 25). As there is no evidence that anyone was ultimately hired as a Small Business Specialist at the EAS-16 level, the number of positions originally available at that level is immaterial. The Court will refer to a single position in its discussion, solely for the sake of simplicity.

[25] Decl. of Darus Macy ¶ 5, Ex. P to Mot. (Docket 28-16).

[26] EEO Dep. at 64-65, 80.

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 4 of 36

Case 3:11-cv-00006-SLG   Document 48   Filed 10/29/12   Page 4 of 36

offered by the USPS.[27]  The document is addressed to postmasters, managers, and supervisors and appears to have been widely distributed.[28]

On August 23, 2008, 38 days after being notified of his non-selection for the Retail Specialist position, Mr. Coleman requested a meeting with a Dispute Resolution Specialist with the USPS EEO Office.[29]  Upon receipt of this appointment request, the EEO sent an Information for Pre-Complaint Counseling form to Mr. Coleman to complete.[30]

While at the USPS, Mr. Coleman had physical work restrictions that ranged at various times from 10 to 70 pounds.[31]  On August 25, 2008, while on FMLA leave, Mr. Coleman received a letter notice from the USPS Human Resources Manager that his physical work restrictions at that time did not meet the minimum requirements of his position.[32]  He was directed to provide medical documentation that demonstrated he would be able to occasionally lift up to 70 pounds within six months, or he could be removed from the USPS.[33]

---

[27] Ex. 8 to Opp. (Docket 34-8).

[28] *Id.*

[29] Information for Pre-Complaint Counseling (Docket 44, EEO file) [Bates #00098].

[30] *Id.*

[31] EEO Aff. H at 6 (Docket 44, EEO file) (Robert Ward) [Bates #00392].

[32] Letter of Aug. 25, 2008 (Docket 44, EEO file) [Bates #00073].

[33] *Id.*

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 5 of 36

Case 3:11-cv-00006-SLG   Document 48   Filed 10/29/12   Page 5 of 36

On August 28, 2008, Mr. Coleman applied for Voluntary Early Retirement with an effective date of December 31, 2008.[34] The application provided that it could be withdrawn by September 30, 2008.[35]

By letter dated September 3, 2008, Mr. Coleman was assigned to a residual vacancy and directed to submit a bid card indicating his preferred assignment.[36] He was also informed then that if he did not submit a bid card by September 11, 2008, he would be assigned to a position after all the returned cards had been processed, and that failure to qualify for an assigned position could result in removal from the USPS.[37] Mr. Coleman submitted a bid card dated September 10, 2008 for three positions.[38] His bid card was stamped as received by the USPS on September 12, 2008.[39] Mr. Coleman was informed by a letter dated September 11, 2008 that he was the only employee who had not returned a bid card and that he was being assigned to a Sales position at the Muldoon Station,[40] a position he had not bid for.[41] He was notified that

---

[34] Opp. at 10 (Docket 41); Ex. 11 to Opp. (Docket 34-11).

[35] *Id.*

[36] Letter of Sept. 3, 2008 (Docket 44, EEO file) [Bates #00511]. It appears that residual vacancy employees were floating employees who could bid on open positions.

[37] *Id.*

[38] EEO Aff. F at 22-26 (Docket 44, EEO file) [Bates #00351-355].

[39] *Id.* at 23 [Bates #00352].

[40] *Id.* at 37 [Bates #00366].

[41] *Id.* at 23 [Bates #00352].

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 6 of 36

Case 3:11-cv-00006-SLG   Document 48   Filed 10/29/12   Page 6 of 36

the position required scheme qualification and training[42] if he was not already qualified, that the training could not be delayed because of physical work restrictions, and that failure to qualify for the position could result in removal.[43]

On September 7, 2008, Mr. Coleman submitted to the USPS EEO Office the Information for Pre-Complaint Counseling form that was sent to him after his August 23, 2008 appointment request.[44] In this form, he alleged that "the latest discriminatory act" toward him had occurred on September 6, 2008 when he received a letter stating that he was being assigned to a residual vacancy and threatening him with potential removal from the USPS if he failed to qualify—presumably Mr. Coleman was referring to the September 3, 2008 letter discussed above. Mr. Coleman described the resolution he sought as "Retire, as per my Request for Early Retirement on 12/31/2008. To be made whole, in all respects."[45] Mr. Coleman did not specifically reference any position he had applied for in this form.

Mr. Coleman did not withdraw his early retirement application, so it became irrevocable at the end of September 2008, when the thirty-day withdrawal period expired.

---

[42] Scheme training involves learning the system for assigning mail to carriers in specific regions. This is now largely done by automation, but occasionally requires human involvement for mis-sent or stray mail. EEO Dep. at 60-62.

[43] EEO Aff. F at 37 (Docket 44, EEO file) [Bates #00366].

[44] Information for Pre-Complaint Counseling (Docket 44, EEO file) [Bates #00098].

[45] *Id.* at 2 [Bates #00099].

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 7 of 36

Case 3:11-cv-00006-SLG   Document 48   Filed 10/29/12   Page 7 of 36

On October 18, 2008, Mr. Coleman made another request for an appointment with a Dispute Resolution Specialist.[46] On October 28, 2008, Mr. Coleman submitted another Pre-Complaint Counseling form.[47] In that form, he expressly alleged that he applied for but was denied the Retail Specialist position and two Small Business Specialist positions in Anchorage USPS offices.[48] This is the earliest document in the record in which Mr. Coleman explicitly raised his non-selection for these positions as the basis for a claim. Mr. Coleman described the resolution he sought as "(1) Promotion to position (2) Back pay (3) Emotional Distress (4) Damages for Constructive Discharge if I am forced to take early Retirement."[49]

On October 31, 2008, Mr. Coleman and his attorney attended a mediation to address his pending EEO claims, but no resolution was achieved.[50] By letter dated November 19, 2008, Mr. Coleman was notified of his right to pursue a formal claim with the EEOC.[51]

Mr. Coleman retired from the USPS on December 31, 2008.[52] He had not returned to work at the USPS after he went on FMLA leave on August 4, 2008.[53]

---

[46] Information for Pre-Complaint Counseling (Docket 44, EEO file) [Bates #00094].

[47] *Id.*

[48] *Id.*

[49] *Id.* at 2 [Bates #00095].

[50] Opp. at 13 (Docket 41); No Agreement Letter (Docket 44, EEO file) [Bates # 00215]. Mr. Coleman's claims were combined into one case, Agency Case No. 4E-995-0031-08.

[51] Ex. C to Mot. (Docket 25-6).

[52] EEO Dep. at 65.

[53] Mr. Coleman's FMLA leave was exhausted on October 2, 2008. EEO Dep. at 80. He did not return to work afterward. *Id.* at 65.

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 8 of 36

Case 3:11-cv-00006-SLG   Document 48   Filed 10/29/12   Page 8 of 36

*PROCEDURAL HISTORY*

**I.   Mr. Coleman's Formal EEO Complaint.**

On December 3, 2008, prior to his retirement, Mr. Coleman filed a formal complaint of discrimination with the USPS EEO Office.[54]  Mr. Coleman was represented by counsel during that process.[55]  The formal complaint alleged:

- improper demotion,

- breach of the demotion settlement agreement,

- failure to promote with regard to two Small Business Specialist (EAS-16) positions and one Retail Specialist (EAS-16) position,

- harassment at the Muldoon Station,

- retaliation for prior EEO activity, and

- constructive discharge (forced retirement).[56]

On January 6, 2009 the USPS EEO Office partially accepted for review and partially dismissed Mr. Coleman's complaint as follows:[57]

- Forced retirement based on retaliatory and discriminatory actions beginning on or around September 6, 2008: **accepted**.[58]

---

[54] EEO Formal Compl. (Docket 44, EEO file) [Bates # 00035-47].

[55] *See* EEO Dispute Resolution Specialist's Inquiry Report (Docket 44, EEO File) [Bates # 00211] (describing October 2008 interview with Mr. Coleman and documentation indicating that he had counsel as of at least August 23, 2008).

[56] *See* EEO Formal Compl. (Docket 44, EEO file) [Bates # 00035-47].

[57] This was a revision of the EEO Office's previous Partial Acceptance/Partial Dismissal of December 15, 2008, which did not include Mr. Coleman's settlement breach claim.  *See* Partial Acceptance/Partial Dismissal (Docket 44, EEO file) [Bates # 0199-00207]; Letter of Jan. 7, 2009 (Docket 44, EEO file) [Bates #00143].

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 9 of 36

- Hostile work environment beginning in 2008: **dismissed** after finding that Mr. Coleman had "only provided a vague and ambiguous account of the alleged harassment" and that his allegation did "not assert a pattern of conduct showing harassment and did not result in direct or personal deprivation in [his] employment sufficient to render [him] aggrieved."[59]

- Allegations of improper demotion and breach of the demotion settlement agreement: **not accepted** for review because allegations of breach of the settlement agreement relate to the prior EEO case and are to be raised with the Regional EEO Manager.[60]

- Non-selection for Retail Specialist (EAS-16) position: **dismissed** as untimely based on a finding that Mr. Coleman had failed to contact an EEO counselor within 45 days of his failure to receive the position and had not provided "a credible explanation" to justify his untimely filing.[61]

The EEO Office then conducted an investigation of the claims it had accepted.[62] On March 8, 2009, it issued a 29-page Investigative Summary that described the

---

[58] Partial Acceptance/Partial Dismissal of Formal EEO Compl. (Revised) at 2, (Docket 44, EEO file) [Bates #00157]. This portion of the complaint that was accepted included "assignment to a residual vacancy, non-selection of two Small Business Specialist positions, and a Fitness-for-Duty examination."

[59] *Id.* at 4 [Bates #00159].

[60] *Id.* at 1, n.1 [Bates #00156].

[61] *Id.* at 5-6 [Bates #00160-161]. *But see* discussion on pages 22-24 below.

[62] Investigative Summary (Docket 44, EEO file) [Bates #00006-00034].

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 10 of 36

Case 3:11-cv-00006-SLG   Document 48   Filed 10/29/12   Page 10 of 36

evidence related to the claims it had accepted for investigation.[63]  Mr. Coleman sought review by an EEOC Administrative Judge.[64]

In August 2009, the Administrative Judge granted Mr. Coleman's request to reinstate his hostile work environment claim.[65]   On December 2, 2010, the Administrative Judge issued a Decision without a Hearing pursuant to 29 C.F.R. 1614.107(g)(3), which authorizes the issuance of a decision without a hearing when "some or all facts are not in genuine dispute."[66]  Applying the federal summary judgment standard, the Administrative Judge issued a 13-page decision in favor of the Postal Service with respect to all of Mr. Coleman's remaining claims.[67]

## II.    Mr. Coleman's Complaint in this Action.

Mr. Coleman, now representing himself, filed the Complaint that initiated this action on January 18, 2011.[68]  He alleges that after his demotion in February 2008, he applied for but was denied interviews and promotions for the positions of Retail Specialist (EAS-16) and Small Business Specialist (EAS-16), which he maintains were given to less qualified individuals.  Mr. Coleman also asserts that he was treated differently than white males who were accused of sexual harassment.  He adds he was subjected to continual harassment and repeated Fitness-for-Duty requests after his

---

[63] *Id.*

[64] Request for Hearing Form (Docket 44, EEO file) [Bates #00003].

[65] EEOC Decision without a Hearing, Ex. K to Mot. at 1-2 (Docket 28-11)

[66] *Id.*

[67] *Id.*

[68] Compl. (Docket 1).

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 11 of 36

Case 3:11-cv-00006-SLG   Document 48   Filed 10/29/12   Page 11 of 36

demotion. He asserts these actions constituted a constructive discharge that forced him into early retirement.[69] In addition, Mr. Coleman alleges that he repeatedly requested the records of the complaints against him that led to his demotion, but has not received them.[70]

Mr. Coleman claims that as a result of these discriminatory actions, he has suffered "financial hardships, mental anguish, medical issues, and loss of credit rating."[71] He seeks lost wages and benefits totaling $560,821.00 as well as punitive damages.[72]

The Defendant filed this Motion for Summary Judgment on April 5, 2012, seeking summary judgment on all of Mr. Coleman's claims.[73] Mr. Coleman opposed on April 30,

---

[69] *Id.* at 5-6.

[70] *Id.* at 5.

[71] *Id.* at 6.

[72] Mr. Coleman also asserted a claim for compensation for IDEAS suggestions he submitted to USPS. eIDEAS is a USPS program that enables "employees to contribute innovative ideas that will improve customer satisfaction, generate revenue, improve safety, increase productivity, reduce costs, and increase its viability in the marketplace. All ideas are eligible for nonmonetary recognition, whether adopted or not, at the discretion of the evaluator. **Only adopted ideas submitted through the eIDEAS application that trigger management action are eligible for monetary compensation.**" ELM 31, Employee and Labor Relations Manual, § 631 (emphasis in original), *available at* http://about.usps.com/manuals/elm/html/elmc6_015.htm. Mr. Coleman has not alleged that any of his eIDEAS submissions were adopted by USPS and does not raise the issue in his Opposition. Thus, as Mr. Coleman has not cited any facts to support his claim, and has failed to respond to it in the course of this motion, his eIDEAS claim is dismissed. *Morin v. U.S.*, 534 F. Supp. 2d 1179, 1183 (D. Nev. 2005) *aff'd*, 244 Fed. Appx. 142 (9th Cir. 2007) (unpublished) (if the nonmoving party fails to present an adequate opposition to a summary judgment motion, the court need not search the entire record for evidence that demonstrates the existence of a genuine issue of fact.") (citing *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029-31 (9th Cir. 2001)).

[73] Mot. (Docket 25).

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 12 of 36

2012[74] and the Defendant replied on May 7, 2012.[75]  Questions for oral argument were distributed on July 5, 2012[76] and oral argument was held on July 23, 2012.[77]

## *DISCUSSION*

### I.   **Jurisdiction.**

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1343.

### II.   **Summary Judgment Standard.**

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The burden of showing the absence of a genuine dispute of material fact lies with the moving party.[78]  If the moving party meets this burden, the non-moving party must present specific factual evidence demonstrating the existence of a genuine issue of fact.[79]  The non-moving party may not rely on mere allegations or denials.[80]  He must demonstrate that enough evidence

---

[74] Opp. (Docket 41).

[75] Reply (Docket 42).

[76] Order Scheduling Oral Argument (Docket 45).

[77] Oral Argument Tr. (Docket 47).

[78] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[79] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986).

[80] *Id.* at 248-49.

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 13 of 36

Case 3:11-cv-00006-SLG   Document 48   Filed 10/29/12   Page 13 of 36

supports the alleged factual dispute to require a finder of fact to make a determination at trial between the parties' differing versions of the truth.[81]

When considering a motion for summary judgment, a court must accept as true all evidence presented by the non-moving party, and draw "all justifiable inferences" in the non-moving party's favor.[82] To reach the level of a genuine dispute, the evidence must be such as "would allow a reasonable fact-finder to return a verdict for the non-moving party."[83] The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[84] If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[85]

A party asserting that a fact cannot be or is genuinely disputed must support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.[86]

---

[81] *Id.* (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253 (1968).

[82] *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

[83] *Id.* at 248.

[84] *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587 (1986)).

[85] *Anderson*, 477 U.S. at 255.

[86] Fed. R. Civ. P. 56(c)(1).

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 14 of 36

Case 3:11-cv-00006-SLG   Document 48   Filed 10/29/12   Page 14 of 36

This Court reviews the facts of this case de novo.[87]

In evaluating summary judgment motions on employment discrimination claims, the Ninth Circuit has "emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses."[88] A court granting summary judgment too readily "runs the risk of providing a protective shield for discriminatory behavior that our society has determined must be extirpated."[89]

## III.   Analysis.

Mr. Coleman has asserted that the USPS subjected him to both racial and retaliatory discrimination by demoting him, failing to promote him, harassing him, ultimately resulting in his constructive discharge from the USPS.

Because Mr. Coleman is self-represented, the Court liberally construes his claims and affords him the benefit of any doubt.[90] Mr. Coleman faced the daunting task of fitting the extensive factual record of his history with the USPS and the EEO office

---

[87] Congress "selected trial de novo as the proper means for resolving the claims of federal employees," rather than traditional appellate record review. *Chandler v. Roudebush*, 425 U.S. 840, 861 (1976). Thus, although the EEOC's Decision without a Hearing is part of the record in this case, this Court considers Mr. Coleman's claims de novo—that is, this Court reviews the facts and law of the case as if they were being examined for the first time and had not already been determined by the EEOC.

[88] *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004) (citations omitted).

[89] *Id.* at 1112.

[90] *See Hebbe v. Plier*, 627 F.3d 338, 342 (9th Cir. 2010) ("[O]ur 'obligation' remains [after *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009)], 'where the petitioner is *pro se,* particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.'") (citation omitted); *Pagayon v. Holder*, 675 F.3d 1182, 1188 (9th Cir. 2011) ("We are particularly careful to give claims raised by *pro se* petitioners their most liberal construction.") (citation omitted).

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 15 of 36

Case 3:11-cv-00006-SLG   Document 48   Filed 10/29/12   Page 15 of 36

into a legal framework. His opposition to the Defendant's motion addresses the facts at some length, and recites several points of law, but does not explicitly apply the law to the facts. As it is not always clear which facts support which claims, the Court has strived to identify each claim Mr. Coleman appears to be making and address the facts that appear to be relevant to that claim in full.

### A. Disparate Treatment under Title VII.

Title VII of the Civil Rights Act of 1964 provides, in relevant part:

> It shall be an unlawful employment practice for an employer … to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.][91]

42 U.S.C. § 2000e-16 prohibits discriminatory practices in the United States Postal Service, and other federal agencies and departments, and provides that the head of the agency shall be named as the defendant in civil actions brought after an employee's EEOC remedies have been exhausted.

When an individual is "singled out and treated less favorably than others similarly situated on account of race," that constitutes disparate treatment under Title VII.[92] A plaintiff may establish a prima facie case of disparate treatment under Title VII by showing, under the framework outlined in *McDonnell Douglas Corp. v. Green*, "that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his

---

[91] 42 U.S.C. § 2000e-2(a)(1).

[92] *McGinest*, 360 F.3d at 1121 (citations omitted).

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 16 of 36

protected class were treated more favorably."[93]  Once the plaintiff has made a prima facie case, this creates a presumption of discrimination, and the burden shifts to the defendant, who must then "articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct."[94]  The burden then shifts back to the plaintiff to demonstrate that the defendant's proffered reason is pretextual, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."[95]  If presenting direct evidence of a discriminatory motive, the plaintiff need not present substantial evidence to survive summary judgment;[96] but if presenting circumstantial evidence of pretext, the plaintiff must come forward with "specific and substantial" evidence in order to create a triable issue of fact.[97]  Pretext evidence is specific and substantial when it is "sufficient to raise a genuine issue of material fact under Rule 56(c)."[98]  And "an employee in this situation can not simply show the employer's decision was wrong, mistaken, or unwise."[99]  At the summary judgment

---

[93] *Chuang v. U. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

[94] *Id.* at 640 (citing *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1148 (9th Cir.1997)); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *McGinest*, 360 F.3d at 1136.

[95] *Texas Dep't of Cmty. Affairs*, 450 U.S. at 256.

[96] *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998).

[97] *Id.* at 1222 (internal quotations and citations omitted).

[98] *Hernandez v. Arizona*, 702 F. Supp. 2d 1119, 1126 (D. Ariz. 2010).

[99] *Dept. of Fair Empl. and Hous. v. Lucent Technologies, Inc.*, 642 F.3d 728, 746 (9th Cir. 2011) (citing *Morgan v. Regents of the Univ. of Cal.*, 88 Cal. App. 4th 52, 105 Cal. Rptr. 2d 652, 670 (2000)) (applying the *McDonnell Douglas* test); *Golden v. W. Corp.*, CV-11-0182-WFN, 2012 WL 405457 (E.D. Wash. 2012) (citing *Dept. of Fair Empl. and Hous.*).

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 17 of 36

Case 3:11-cv-00006-SLG   Document 48   Filed 10/29/12   Page 17 of 36

stage, it is possible for a plaintiff to succeed in establishing a prima facie case of discrimination under *McDonnell Douglas*, but fail to present sufficient evidence of pretext.[100]

As an alternative to the process outlined in *McDonnell Douglas*, the plaintiff may begin by meeting his ultimate burden of presenting "direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the employer]."[101]

"A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[102]  "Tangible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates.  A tangible employment decision requires an official act of the enterprise, a company act.  The decision in most cases is documented in official company records."[103]

### B. Demotion and Breach of Settlement Agreement.

Mr. Coleman has testified that he agreed to accept a demotion in the February 2008 settlement in lieu of removal because he did not want to lose his retirement

---

[100] *See, e.g., Hernandez v. Arizona*, 702 F. Supp. 2d 1119, 1124 (D. Ariz. 2010) ("While Hernandez has sufficiently established a prima facie case of retaliation, he has not presented sufficient evidence of pretext to survive summary judgment on this claim.")

[101] *McGinest*, 360 F.3d at 1122; *id.* at 1137 (citing *Texas Dep't of Cmty. Affairs*, 450 U.S. at 256).

[102] *Burlington Industries v. Ellerth*, 524 U.S. 742, 761 (1998).

[103] *Id.* at 762.

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 18 of 36

Case 3:11-cv-00006-SLG   Document 48   Filed 10/29/12   Page 18 of 36

benefits.[104]  He asserts that the demotion was a discriminatory punishment.[105]  Mr. Coleman additionally alleges that he accepted the demotion based on verbal assurances from his supervisor and his supervisor's representative that he would not be barred from management positions in the future.[106]  But he also testified that he was not promised that he would receive the next available management position, and he testified that he was not promised any kind of preferential treatment.  Rather, he indicated that he was verbally assured that despite the demotion, he "had the opportunity to apply for upper mobility and . . . could apply for management positions."[107]

The settlement agreement is on a typewritten form, with additional specific terms written in by hand.[108]  The handwritten terms provide (1) that Mr. Coleman's notice of removal would be converted to a "Final Written Warning in Lieu of Termination," (2) that Mr. Coleman would be demoted to a PS-05  position,[109] (3) that Mr. Coleman's seniority would be "one day less than the junior unassigned regular," and (4) a statement that the agreement "does not set a precedent for any future matters and may not be used in any

---

[104] Coleman Dep. at 16.

[105] *Id.* at 17.

[106] Opp. at 16 (Docket 41); Coleman Dep. at 23-24.

[107] Coleman Dep. at 23.

[108] Settlement Agreement (Docket 44, EEO file) [Bates #00507-509].

[109] As noted above, Mr. Coleman had been in an EAS level 21 position.

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 19 of 36

other proceeding of any kind."[110]  The agreement also contains the following apparently standard typewritten language:

> As a complete and final settlement of the subject matter, and without prejudice to the position of the parties in this or any other case, and with the understanding that this settlement will not be cited in other proceedings, by the appellant, the appellant's representative (if any) and/or any representative organization, the following resolution has been entered into by the parties.
>
> It is understood that this agreement is final and binding therefore, no Letter of Decision will be issued.  Further, this document is confidential however, a copy of this agreement will be furnished to those parties necessary to implement its terms[.][111]

The written settlement agreement contains no assurances relating to future promotions or management positions.

Mr. Coleman has stated that during his time with the USPS he "observed many supervisors and managers accept demotion and in a year or two receive promotions."[112] In his Complaint, Mr. Coleman lists the names of several USPS employees to support of this statement.[113]  But even when viewing the facts in the light most favorable to Mr. Coleman, and assuming that verbal assurances to promote did form a part of the agreement, Mr. Coleman has not provided any evidence, nor has he asserted, that there was a promise to promote him at the next available opportunity which arose several months after the agreement was reached.[114]  Therefore, to the extent that Mr.

---

[110] Settlement Agreement (Docket 44, EEO file) [Bates #00507-508].

[111] *Id.*

[112] Formal EEO Complaint at 5 (Docket 44, EEO file) [Bates #00040]; Coleman Dep. at 17-18.

[113] Compl. at 5 (Docket 1).

[114] *See Lipscomb v. Winter*, 577 F. Supp. 2d 258, 273 (D.D.C. 2008) ("Nothing on the face of the cited statements suggests a promise to grant the promotion—they indicate, at most, that he will be

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 20 of 36

Case 3:11-cv-00006-SLG   Document 48   Filed 10/29/12   Page 20 of 36

Coleman is alleging that the Defendant breached the settlement agreement when it did not promote Mr. Coleman to the next available management position, that claim is dismissed.[115]

The settlement agreement also provided that "[a]ny alleged breach arising out of the implementation of, or compliance with this settlement agreement must be reported in writing to the District Manager, Human Resources within 30 days of the alleged breach."[116] Mr. Coleman has indicated that he first raised his concerns with the settlement agreement on December 3, 2008, when he included this issue in his formal EEO Complaint of Discrimination.[117]

To the extent that Mr. Coleman is alleging that his demotion in February 2008 was discriminatory, the undisputed facts demonstrate that claim is not properly before the Court. Mr. Coleman agreed to the terms of the settlement, which explicitly provide that the agreement is confidential and is not to be referenced in future proceedings. Mr. Coleman has not presented, either in his written submissions or at oral argument, a persuasive argument to support this Court's intervention into the terms of that confidential agreement. Nor did Mr. Coleman timely pursue administrative remedies with respect to any such claim. Accordingly, summary judgment is granted to the

---

"considered" for promotions in the future."), *aff'd in part, remanded in part on other grounds*, 2009 WL 1153442 (D.C. Cir. 2009); Reply at 3 (Docket 42).

[115] The extent to which either party may be able to refer to the agreement if this case proceeds to trial is not addressed by this order; rather, that issue may be the subject of pretrial motion *in limine* practice as warranted.

[116] Settlement Agreement Continuation Sheet (Docket 44, EEO file) [Bates #00509]

[117] EEO Complaint (Docket 44, EEO file) [Bates #00035]; Oral Argument Tr. at 25 (Docket 47).

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 21 of 36

Case 3:11-cv-00006-SLG   Document 48   Filed 10/29/12   Page 21 of 36

Defendant with regard to any claim arising from Mr. Coleman's February 2008 demotion.

### C. Failure to Promote.

   i. *Retail Specialist Position (EAS-16).*

In April 2008, Mr. Coleman applied for the position of Retail Specialist (EAS-16). He was interviewed for this position on June 18, 2008.[118] Mr. Coleman received notice that he had not been selected for the position on July 16, 2008.[119] The position was awarded to a white male who had been a secretary at a level EAS-11 or EAS-13.[120]

In order to proceed with a race discrimination claim, "[a]n aggrieved person must initiate contact with a [EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory[.]"[121] The EEO Office did not consider Mr. Coleman's Retail Specialist claim on the merits, as it determined that Mr. Coleman had not made contact with the EEO Office regarding this issue within 45 days and had failed to provide a credible reason for his untimeliness.[122] Mr. Coleman asked the Administrative Judge to reinstate this claim, asserting that he had initiated the claim on August 23, 2008.[123] But the Administrative Judge also determined that Mr. Coleman had failed to initiate his

---

[118] Coleman Dep. at 71; Application (Docket 44, EEO file) [Bates #00115]; Interview Questionnaire (Docket 44, EEO file) [Bates #00113].

[119] Letter of July 16, 2008 (Docket 44, EEO file) [Bates #00072].

[120] Formal Compl. at 10 (Docket 44, EEO file) [Bates #00045].

[121] 29 C.F.R. § 1614.105 (a)(1). *See also Kraus v. Presidio Trust Facilities Div./Residential Mgt. Branch*, 572 F.3d 1039, 1043 (9th Cir. 2009).

[122] Partial Acceptance/Partial Dismissal (Revised) (Docket 44, EEO file) [Bates #00161-62].

[123] Partial Dismissal Reinstatement Request at 3, Ex. I to Mot. (Docket 25-12).

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 22 of 36

Case 3:11-cv-00006-SLG   Document 48   Filed 10/29/12   Page 22 of 36

Retail Specialist claim within the requisite 45-day period. The Administrative Judge noted that the Retail Specialist claim was not on Mr. Coleman's September 7, 2008 written complaint report, and that Mr. Coleman's October 28, 2008 complaint report "for the first time included a claim of non-selection on the Retail Specialist position."[124]

The precise content of Mr. Coleman's August 23, 2008 EEO contact is not included in the record. Although Mr. Coleman later, in connection with that contact, filed his September 7, 2008 Information for Pre-Complaint Counseling form, that form discusses only what it terms "the latest incident" that occurred on September 6, 2008.[125] Since that incident occurred after August 23, 2008, it could not have formed the basis of Mr. Coleman's August 23, 2008 EEO contact. Of note, the EEO Counselor report identifies three discrimination claims, only one of which arose prior to August 23, 2008 – the Retail Specialist claim.[126] That report supports a reasonable inference that Mr. Coleman identified the Retail Specialist claim in his communication with the EEO Counselor on that date. In addition, a letter from an EEO Dispute Resolution Specialist dated November 19, 2008 characterizes Mr. Coleman's EEO case, which included the Retail Specialist claim, as having been initiated on August 23, 2008.[127]

---

[124] Notice and Order: MOTIONS at 1-2, Ex. J to Mot. (Docket 25-13).

[125] Information for Pre-Complaint Counseling (Docket 44, EEO file) [Bates #00098].

[126] EEO Dispute Resolution Specialist's Inquiry Report at 1 (Docket 44, EEO file) [Bates #00079] (identifying date of initial contact as August 23, 2008).

[127] Letter of Nov. 19, 2008 (Docket 44, EEO file) (discussing claim initiated on August 23, 2008 that included non-selection for the Retail Specialist position on July 16, 2008) [Bates #00085].

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 23 of 36

Case 3:11-cv-00006-SLG   Document 48   Filed 10/29/12   Page 23 of 36

The Defendant asserts that Mr. Coleman did not initiate contact with the EEO counselor within the requisite 45 days with respect to the Retail Specialist claim so that this claim is not properly before the Court.[128]

"Whether a plaintiff in a Title VII action has timely exhausted [his] administrative remedies is an affirmative defense, so the Defendant bears the burden of pleading and proving it."[129]   On the record before the Court, the Defendant has failed to meet this burden.  Particularly given the Ninth Circuit's emphasis on "the importance of zealously guarding an employee's right to a full trial" in employment discrimination cases,[130] this Court finds that there is a genuine issue of material fact as to Mr. Coleman's timely pursuit of his administrative remedies on this claim.[131]   Accordingly, the Defendant's Motion for Summary Judgment is denied with regard to the Retail Specialist claim.

ii.  *Small Business Specialist Position (EAS-16).*

On July 1, 2008, Mr. Coleman applied for a Small Business Specialist position that had been posted in June 2008.[132]   On September 11, 2008, Mr. Coleman was

---

[128] Mot. at 16 (Docket 25).   Mr. Coleman asserts that he did not expressly identify the Retail Specialist position in his September 7, 2008 written filing because he had an application pending for the Small Business Specialist position at that time and he was concerned about retaliation.  Opp. at 9 (Docket 41).  The Defendant argues that Mr. Coleman's "fears do not obviate the need to timely contact a counselor."  Reply at 6 (Docket 42) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 806-07 (1998).  However, as the record indicates that Mr. Coleman may have timely contacted an EEO counselor on August 23, 2008, this line of inquiry is moot.

[129] *Kraus*, 572 F.3d at 1046 (internal quotation marks and citations omitted).

[130] *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004) (citations omitted).

[131] At oral argument, counsel for the Defendant candidly acknowledged that the record could be interpreted as supporting timely contact on this claim.  Oral Argument Tr. at 30 (Docket 47) (Defendant's counsel on Mr. Coleman's EEO contact regarding the Retail Specialist position: "And so I think the Court could read it as a timely contact.")

[132] Coleman Dep. at 70; Opp. at 8.

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 24 of 36

Case 3:11-cv-00006-SLG   Document 48   Filed 10/29/12   Page 24 of 36

informed that he had not been selected for an interview for the position.[133]   Other applicants were selected to be interviewed for this position, but a hiring freeze took effect before the interviews were completed.[134]

In *McGinest v. GTE Service Corp.*, the Ninth Circuit addressed an employer's assertion that it failed to promote the plaintiff due to a hiring freeze.  In that case, the African-American plaintiff was interviewed and selected for the promotion, but when the supervisor called human resources for salary authorization, he was informed that a hiring freeze was in place.[135]   Subsequently, a white employee was moved laterally into the position.[136]   The Ninth Circuit, reviewing the District Court's grant of summary judgment to the employer *de novo*, found that "the absence of any documentation confirming that a company hiring freeze was in place" was "sufficient to raise a genuine factual dispute as to whether the asserted reason was pretextual."[137]   The Ninth Circuit determined that the fact that a large company such as the employer in *McGinest* had no documentation of its hiring freeze "provided circumstantial evidence that the hiring freeze did not in fact exist."[138]   In *McGinest*, the Court found that "a number of factors

---

[133] Opp. at 12 (Docket 41).

[134] Decl. of Darus Macy dated Sept. 11, 2009, Ex. P to Mot. (Docket 28-16)  ("Before I could complete the interviews of the three applicants recommended by the screening committee, I was advised by the District Manager that there was a hiring freeze and I could not fill the position.")

[135] *McGinest*, 360 F.3d at 1111.

[136] *Id.*

[137] *Id.* at 1123.

[138] *Id.*

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 25 of 36

Case 3:11-cv-00006-SLG   Document 48   Filed 10/29/12   Page 25 of 36

cast doubt upon [the employer's] proffered explanation."[139]  It cited the employer's "permissive response to harassing actions undertaken by coworkers and supervisors, combined with the absence of black supervisors and managers in the workplace" as "circumstantial evidence of pretext."[140]  And in *McGinest*, the plaintiff had already been selected for the position when the alleged hiring freeze was instituted.[141]

Here, in contrast to *McGinest,* the Defendant has provided sworn testimony that the Small Business Specialist position had still not been filled over a year after Mr. Coleman's non-selection.[142] And here, in contrast to *McGinest*, the hiring freeze took effect after Mr. Coleman had been eliminated from the selection process—which indicates that it was not directed at him.  At oral argument, Mr. Coleman challenged the Defendant's assertion that a hiring freeze prevented the position from being filled.  But Mr. Coleman has not presented any specific factual evidence to dispute the Defendant's sworn testimony that there was a hiring freeze.[143]  The Court finds that Mr. Coleman has failed to demonstrate a genuine issue of fact as to whether a hiring freeze occurred.

---

[139] *Id.* at 1124.

[140] *Id.* at 1123.

[141] *Id.* at 1111.

[142] Decl. of Darus Macy dated Sept. 11, 2009, Ex. P to Mot. (Docket 28-16) ("To this date, the position has never been filled.")

[143] *Id.* ("Before I could complete the interviews of the three applicants recommended by the screening committee, I was advised by the District Manager that there was a hiring freeze and I could not fill the position.")

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 26 of 36

Case 3:11-cv-00006-SLG   Document 48   Filed 10/29/12   Page 26 of 36

Thus, the appropriate subject for Mr. Coleman's claim is the USPS' failure to interview him for, not its failure to promote him to, a Small Business Specialist position.[144]

At oral argument, the Court specifically asked Mr. Coleman to explain how his non-selection for an interview constituted an adverse employment action when he had no evidence that the position was ever filled.[145] Mr. Coleman repeated his argument that his non-selection for an interview was discriminatory, but did not explain how his non-selection in these circumstances constituted an adverse employment action.[146] An adverse employment action is a necessary element of a prima facie case under *McDonnell Douglas*,[147] and such an action has not been demonstrated with respect to this claim. Accordingly, summary judgment is granted to the Defendant with regard to Mr. Coleman's claims arising from his non-interview and non-selection for a Small Business Specialist position.

---

[144] Mr. Coleman has also asserted that one of the hiring committee members for the position did not interview him because the member's spouse was named in Mr. Coleman's 1991 EEO Complaint. Coleman Aff. No. 3 at 1-2 (Docket 37). There is very little in the record to support this assertion. Moreover, as the Court determines that Mr. Coleman has failed to allege an adverse employment action, as discussed below, it need not address the merits of Mr. Coleman's allegations regarding the committee's motives.

[145] Oral Argument Tr. at 21 (Docket 47). *See also* Order Scheduling Oral Argument at 3 (Docket 45) (citing *Chuang v. U. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1126 (9th Cir. 2000)).

[146] Oral Argument Tr. at 21 (Docket 47) (In response to the Court's question, Mr. Coleman responded "I'm saying that the discrimination took place when they did not grant me an interview . . . for a position I was qualified for.")

[147] While a screening process that artificially filters out members of a protected class may be grounds for a disparate impact claim, *see, e.g., Connecticut v. Teal*, 457 U.S. 440, 451 (1982); *Stout v. Potter*, 276 F.3d 1118, 1123 (9th Cir. 2002), the Court has been presented with no authority supporting an individual's non-selection for an interview for an ultimately non-existent promotion as meeting the definition of "adverse employment action" under Ninth Circuit precedent.

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 27 of 36

### D. Hostile Work Environment.

Title VII guarantees "the right to work in an environment free from discriminatory intimidation, ridicule, and insult."[148]   Thus, an individual may seek redress for harassment in the workplace under Title VII in the absence of an employer's tangible adverse employment action via a hostile work environment claim.  However, in order to prevail on this claim, a plaintiff must show that his "workplace [was] permeated with discriminatory intimidation, ridicule, and insult . . . that [was] sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment."[149]

The Ninth Circuit has held that to make a prima facie case for a race-based hostile work environment under Title VII, a plaintiff must demonstrate that "(1) he was subjected to verbal or physical conduct because of his race; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment."[150]  To preclude summary judgment on this claim, Mr. Coleman "must show the existence of a genuine factual dispute as to 1) whether a reasonable African-American man would find the workplace so objectively and subjectively racially hostile as to create an abusive

---

[148] *McGinest,* 360 F.3d at 1112.

[149] *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993); *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995) (citing *Harris*, 510 U.S. at 21-22).

[150] *Johnson v. Riverside Healthcare Sys.*, *LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (internal substitutions omitted) (citing *Manatt v. Bank of Am.*, 339 F.3d 792, 798 (9th Cir. 2003)).

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 28 of 36

Case 3:11-cv-00006-SLG   Document 48   Filed 10/29/12   Page 28 of 36

working environment; and 2) whether [his employer] failed to take adequate remedial and disciplinary action."[151]

       i.    *Harassment after Mr. Coleman's August 4, 2008 Departure on Sick Leave.*

Mr. Coleman asserts that the USPS' requests that he complete scheme training, meet the physical requirements of his position, and pass a fitness for duty exam or risk termination contributed to a hostile work environment. Mr. Coleman cites to certain letters he received from the USPS to support this assertion. Specifically, Mr. Coleman refers to a letter from Human Resources dated August 25, 2008;[152] a letter from one of his supervisors dated September 11, 2008;[153] and a letter from the same supervisor dated November 20, 2008.[154]

It is undisputed that for the entire period between August 4, 2008 and Mr. Coleman's retirement on December 31, 2008, Mr. Coleman was on leave. Even assuming, without deciding, that the letters sent to Mr. Coleman after August 4, 2008 would be sufficient to satisfy the first two elements of the Ninth Circuit's hostile work environment test, the letters fail to satisfy the third element because they do not constitute conduct "sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment"[155] because Mr. Coleman was

---

[151] *McGinest*, 360 F.3d at 1112 (citing *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1462-63 (9th Cir.1994); *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).

[152] Letter of Aug. 25, 2008 (Docket 44, EEO file) [Bates #00073].

[153] EEO Aff. F at 37 (Docket 44, EEO file) [Bates #00366].

[154] EEO Dep. at 105-106.

[155] *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (internal substitutions omitted) (citing *Manatt*, 339 F.3d at 798).

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 29 of 36

Case 3:11-cv-00006-SLG   Document 48   Filed 10/29/12   Page 29 of 36

not at the work environment after August 4, 2008. As a result, there is no genuine factual dispute for that time period as to "whether a reasonable African-American man would find the workplace so objectively and subjectively racially hostile as to create an abusive working environment[.]"[156] Accordingly, summary judgment is granted to the Defendant with regard to Mr. Coleman's hostile work environment claims arising from events after August 4, 2008.

    *ii.   Harassment during Mr. Coleman's Employment at the Muldoon Station.*

Mr. Coleman has asserted hostile work environment claims arising from conduct that occurred while he was working at the Muldoon Station, beginning shortly after his demotion in February 2008 until August 4, 2008. He alleges that while assigned to the Muldoon Station, USPS management harassed him in the following ways:

    *(a) Disregarded Work Restrictions.*

Mr. Coleman has alleged that despite having documented work restrictions that limited the amount of weight he could lift, he was assigned tasks at the Muldoon Station that required him to lift objects heavier than his restrictions permitted.[157] However, Mr. Coleman has testified that if he required assistance, he could obtain it.[158] And he has testified that he is not sure if he complained to anyone that he was required to lift

---

[156] *McGinest,* 360 F.3d at 1112 (citing *Steiner,* 25 F.3d at 1462-63); *Faragher,* 524 U.S. at 787).

[157] Coleman Dep. at 56.

[158] *Id.* at 57-58.

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 30 of 36

Case 3:11-cv-00006-SLG   Document 48   Filed 10/29/12   Page 30 of 36

objects that exceeded his restrictions.[159]  Furthermore, Mr. Coleman testified at his EEO deposition that he never knowingly exceeded his restrictions.[160]

### (b) Required to Sort Mail without Assistance.

Mr. Coleman has testified that he was made to sort mail without assistance. However, he has also testified that he was the only clerk at the Muldoon Station assigned to that task, and that it was a necessary one.[161]  And he has testified that if he was unable to keep up with the mail volume, he was not threatened with disciplinary action, and would sometimes get assistance.[162]  Mr. Coleman stated that under good management, multiple clerks would have that assignment,[163] but did not know if any other stations had only one clerk sorting mail at a time.[164]

### (c) Required to Travel from Station to Station.

In early September 2008, Mr. Coleman was informed that his new work responsibilities required him to work at the Muldoon Station for the first part of the day,

---

[159] *Id.* at 57-58.

[160] EEO Dep. at 64.  Mr. Coleman later testified, in the course of this litigation, that he was required to exceed his work restrictions.  He testified that his restrictions permitted him to "lift up to 20 pounds intermittent," but that he was made to pass mail around "at over 10 to 20 pounds," although he "didn't weigh [the packages] individually."  *See* Coleman Dep. at 56.  The Court finds that this later inconsistent testimony, paired with the fact that lifting 10 to 20 pounds was not a clear violation of Mr. Coleman's restrictions as he described them, does not overcome Mr. Coleman's earlier testimony that he never knowingly exceeded his restrictions.

[161] Coleman Dep. at 49-50.

[162] *Id.* at 51.

[163] *Id.* at 49-50.

[164] *Id.* at 52.

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 31 of 36

Case 3:11-cv-00006-SLG   Document 48   Filed 10/29/12   Page 31 of 36

then drive to Eastchester Station for the remainder of the day.[165]  Mr. Coleman asserts that this was unusual.[166]

### (d) Micromanagement.

Mr. Coleman has testified that one of his Muldoon Station supervisors regularly harassed him by engaging in micro-managing techniques, such as following him around and waiting for him at the end of his breaks.[167]  He testified that another supervisor also followed him around.[168]

### (e) Assigned Humiliating Duties.

At his EEO deposition, Mr. Coleman testified that one of his Muldoon Station supervisors made him perform demeaning and harassing tasks, and expressed a demeaning manner toward him, but could not recall any specific instances of either.[169]  Mr. Coleman testified that he did not complain about this or expressed his concerns to

---

[165] Opp. at 11 (Docket 41).

[166] Coleman Dep. at 66.  One of Mr. Coleman's supervisors has testified that at least one other employee, a female clerk of Hawaiian descent, was also required to drive to various stations around town to work.  EEO Aff. G at 6 (Docket 44, EEO file) [Bates #00378].  And another supervisor has testified that Mr. Coleman's position as an unassigned regular, not his race, would have been the factor that determined where he was sent and that other unassigned clerks, as well as carriers, routinely moved between stations.  EEO Aff. B at 5, 7 (Docket 44, EEO file) [Bates #00242, 00244].

[167] EEO Dep. at 66; Opp. at 4 (Docket 41).

[168] Coleman Dep. at 52-53; Opp. at 4 (Docket 41).  One of Mr. Coleman's supervisor has testified that the nature of Mr. Coleman's position required close supervision, as Mr. Coleman "would be directed to perform work within his restrictions daily and the operational needs change[d] daily."  EEO Aff. B at 13 (Docket 44, EEO file) [Bates #00250].  Another supervisor testified that she directed Mr. Coleman as well as the other clerks under her supervision as to what to do and in what order, and that all employees are monitored and moved around based on need.  Investigative Summary at 10 (Docket 44, EEO file) [Bates #00015]; EEO Aff. G at 8 (Docket 44, EEO file) [Bates #00380].

[169] EEO Dep. at 67.

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 32 of 36

Case 3:11-cv-00006-SLG   Document 48   Filed 10/29/12   Page 32 of 36

anyone.[170]   He also testified that his supervisor never yelled or used demeaning language at him.[171]

    (f)  *Interference with Typing Test.*

    Mr. Coleman states that as part of his application for a position as a secretary in Marketing, he was required to take a typing test.  He has testified that the test was administered to him in a discriminatory fashion because he was made to take it in the middle of a busy office and interrupted twice.[172]  He alleges that this caused him to fail the test and not receive the position.[173]

    Applying the Ninth Circuit's test to all of these factual allegations, the Court finds that Mr. Coleman's hostile work environment claim fails on the first element.[174]  He has not alleged any facts indicating that "he was subjected to verbal or physical conduct because of his race."[175]   Racial harassment claims "are reviewed under the same standard as those based on sexual harassment."[176]  Typically, courts find that conduct meets the "because of" race or gender criterion when the conduct involves physical harassment, such as uninvited or offensive touching, or explicit verbal reference to race

---

[170] *Id.* at 68.

[171] *Id.* at 68.

[172] *Id.* at 106-107; Opp. at 6 (Docket 41).

[173] Opp. at 6 (Docket 41).

[174] *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (citing *Manatt*, 339 F.3d at 798).

[175] *Id.* (internal substitutions omitted).

[176] *McGinest,* 360 F.3d at 1115.

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 33 of 36

Case 3:11-cv-00006-SLG   Document 48   Filed 10/29/12   Page 33 of 36

or gender.[177]  The Supreme Court has held that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[178]  The Court finds that Mr. Coleman has done no more than recite the elements of a cause of action: he has stated that the USPS discriminated against him because of his race, but has alleged insufficient facts to support this statement.[179]  Accordingly, the Court finds that Mr. Coleman has not alleged any instances of "*discriminatory* intimidation, ridicule, and insult," nor demonstrated that any such conduct was "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment."[180]  He has not demonstrated a genuine factual dispute as to "whether a reasonable African-American man would find the workplace so objectively and subjectively racially hostile as to create an abusive working environment[.]"[181]  Summary judgment is therefore granted to the Defendant with regard to Mr. Coleman's hostile work environment claims.[182]

---

[177] *See, e.g., id.* at 1112 (explicit racial slurs and graffiti); *Kortan v. California Youth Authority*, 217 F.3d 1104, 1114-5 (9th Cir. 2000) (Fisher, J. dissenting in part) (surveying cases involving specific offensive language); *Faragher v. City of Boca Raton*, 524 U.S. 775, 780-83 (1998) (physical harassment).

[178] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[179] *See, e.g.,* EEO Dep. at 25-27 (Mr. Coleman testifies that one of his supervisors directly discriminated against him by participating in his harassment, and that she participated by condoning the harassment); *id.* at 40-41 (Mr. Coleman, when asked how he felt he was discriminated against, refers without specificity to "discriminatory actions" and "general discriminatory practices by Muldoon management.").

[180] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (emphasis added).

[181] *McGinest,* 360 F.3d at 1112 (citing *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1462-63 (9th Cir.1994); *Faragher*, 524 U.S. at 787).

[182] The Court notes that while it has found the facts alleged by Mr. Coleman insufficient, standing alone, to sustain a hostile work environment claim, this determination does not preclude Mr.

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 34 of 36

Case 3:11-cv-00006-SLG   Document 48   Filed 10/29/12   Page 34 of 36

### E. *Constructive Discharge.*

Mr. Coleman claims that the hostile work environment constituted a constructive discharge because his working conditions forced him into early retirement.   As explained above, a hostile work environment claim under Title VII requires conduct "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[183]   The Supreme Court has held that a combined "hostile-environment constructive discharge claim entails something more" than a hostile environment claim: it requires "working conditions so intolerable that a reasonable person would have felt compelled to resign."[184]   As the Court has found that Mr. Coleman has not alleged facts sufficient to support a hostile work environment claim, it follows that he has not meet the more stringent requirements of a constructive discharge claim.   Accordingly, summary judgment is granted to the Defendant with regard to Mr. Coleman's constructive discharge claim.

\

\

\

\

\

\

---

Coleman from seeking to offer these facts as evidence of discrimination in the context of his remaining claim.

[183] *Harris*, 510 U.S. at 21.

[184] *Pennsylvania State Police v. Suders*, 542 U.S. 129, 131 (2004).

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 35 of 36

*CONCLUSION*

For the foregoing reasons, the Defendant's Motion for Summary Judgment is:

1.      DENIED with respect to Mr. Coleman's failure to promote claim arising from his non-selection for the Retail Specialist position, and

2.      GRANTED with respect to all other claims in Mr. Coleman's Complaint.

Dated at Anchorage, Alaska this 29th day of October, 2012.

/s/ Sharon L. Gleason
United States District Judge

3:11-cv-00006-SLG, *Coleman v. Donahoe*
Order Re Defendant's Motion for Summary Judgment
Page 36 of 36

Case 3:11-cv-00006-SLG   Document 48   Filed 10/29/12   Page 36 of 36