**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

GEORGE M. COLEMAN,

                      Plaintiff,

        v.

PATRICK R. DONAHOE,
Postmaster General,

                    Defendant.       Case No. 3:11-cv-00006-SLG

## ORDER GRANTING SECOND MOTION FOR SUMMARY JUDGMENT

Before the Court is defendant Patrick R. Donahoe's Second Motion for Summary Judgment at Docket 54. Plaintiff George M. Coleman, representing himself, opposed the motion at Docket 56. The defendant replied at Docket 57. For the reasons discussed below, the motion is GRANTED.

## PROCEDURAL HISTORY

George Coleman, an African American male, was formerly employed by the United States Postal Service ("USPS"). Mr. Donahoe is the Postmaster General of the USPS and is named in this action in his official capacity.[1] Mr. Coleman filed the Complaint in this action on January 18, 2011, alleging several claims of employment discrimination. At Docket 25, the USPS moved for summary judgment on all claims asserted in the Complaint. After the parties presented their positions in briefing and at oral argument, the Court granted the USPS's motion with respect to all of the claims asserted in the Complaint with the exception of Mr. Coleman's failure to promote claim

---

[1] For simplicity, the Court will use the term "USPS" to refer to the defendant.

arising from his non-selection for a Retail Specialist position.[2]  As to that claim, the USPS Equal Employment Opportunity Office had previously found that Mr. Coleman had not exhausted his remedies, so it had not considered that claim on the merits.  The USPS had relied on that exhaustion determination in its first summary judgment motion.  Because the factual record with regard to that claim had not been fully developed by either party, the Court denied summary judgment at that time on that claim.[3]  At a status hearing on November 27, 2012, the Court granted the USPS leave to file a second summary judgment motion addressing the Retail Specialist claim on the merits.  That second motion is now before the Court.  Oral argument was not requested and was not necessary to the Court's determination of the motion.

## FACTUAL BACKGROUND

The broader facts of this case are presented in the Court's order on the USPS's first motion for summary judgment.[4]  This order focuses on those facts relevant to the Retail Specialist claim.

Mr. Coleman worked for the USPS from October 1978 until December 31, 2008.[5]  While at the USPS, Mr. Coleman held several positions, including management positions.[6]  In December 2007, as a result of an Equal Employment Opportunity complaint for sexual harassment that had been filed against him, Mr. Coleman was

---

[2] Docket 48.

[3] Docket 48 at 22 (citing Partial Acceptance/Partial Dismissal (Revised) (Docket 44, EEO file) [Bates #00161-62]).

[4] Docket 48; 2012 WL 5342713, __ F. Supp. 2d__ (D. Alaska 2012).

[5] Dep. of George M. Coleman at 10, Feb. 1, 2012 (Docket 25-1) [hereinafter Coleman Dep.].

[6] EEO Dep. at 16; Coleman Dep. at 12.

informed that his termination had been recommended.[7]  Mr. Coleman filed a responsive

EEO complaint and the dispute was subsequently settled in February 2008, with Mr.

Coleman accepting demotion from a level EAS-21 to a level PS-05 rather than

termination.[8]

In April 2008, Mr. Coleman applied for the position of Retail Specialist at a level

EAS-16.  The Retail Specialist position was open to all career USPS employees within

the Alaska District.[9]   In the job posting, the position's "functional purpose" was

described as "Develops procedures for the implementation of national retail programs

within a district; provides program oversight and coordinates program implementation

with Postmasters and retail unit managers."[10]   Nine categories of qualifications and

requirements were listed, including:

> 3. Knowledge of retail operations and programs, including contract
> units, vending, and stamps on consignment.
>
> [. . .]
>
> 7. Ability to communicate orally and in writing in order to coordinate
> activities with other functional areas and other government
> agencies; to provide technical advice to managers and
> postmasters; and to maintain contact with contractors, vendors, and
> the general public.
>
> 8. Ability to manage retail programs and research projects,
> including planning, organizing, and monitoring progress, to meet
> retail marketing objectives.

---

[7] Coleman Dep. at 15; Withdrawal of ELM 650 Appeal (Docket 44, EEO File) [Bates #00170].

[8] Investigative Summary at 11 and Ex. 2 (Docket 44, EEO file) [Bates #00016, 00503-504]; EEO Dep. at 16; Coleman Dep. at 12; Settlement Agreement (Docket 44, EEO file) [Bates #00507-508].

[9] Docket 54-1 at 3 (Ex. 1 to Rampmeyer Decl.).

[10] Docket 54-1 at 3 (Ex. 1 to Rampmeyer Decl.).

9. Knowledge of retail products and services, including Express Mail, passport applications, and Selective Service registration.[11]

Four other individuals also submitted applications.[12] Robin Rampmeyer and Darus Macy conducted the interviews for the position. Mr. Coleman's interview was on June 18, 2008; he received notice that he had not been selected for the position on July 16, 2008.[13] The position was awarded to a white male, R.B.[14]

Mr. Coleman alleges that the USPS's failure to promote Mr. Coleman to the Retail Specialist position constituted unlawful discrimination on the basis of race and retaliation.

## DISCUSSION

### I. Jurisdiction.

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1343.

### II. Summary Judgment Standard.

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of showing the absence of a genuine dispute of material fact lies with the moving party.[15] If the moving party

---

[11] Docket 54-1 at 3 (Ex. 1 to Rampmeyer Decl.).

[12] Docket 54 at 3 (citing Ex. A).

[13] Coleman Dep. at 71; Application (Docket 44, EEO file) [Bates #00115]; Interview Questionnaire (Docket 44, EEO file) [Bates #00113]; Letter of July 16, 2008 (Docket 44, EEO file) [Bates #00072].

[14] Formal Compl. at 10 (Docket 44, EEO file) [Bates #00045].

[15] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

meets this burden, the non-moving party must present specific factual evidence demonstrating the existence of a genuine issue of fact.[16] When considering a motion for summary judgment, a court must accept as true all evidence presented by the non-moving party, and draw "all justifiable inferences" in the non-moving party's favor.[17] Because Mr. Coleman is self-represented, the Court liberally construes his claims and affords him the benefit of any doubt.[18]

## III. Analysis.

Mr. Coleman's failure to promote claim arises under Title VII of the Civil Rights Act of 1964.[19] To establish a prima facie case for this claim, Mr. Coleman must demonstrate "that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably."[20] If Mr. Coleman presents a prima facie case, a presumption of discrimination arises. The burden then shifts to the USPS, who must "articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct."[21] If the USPS does so, the burden then shifts back to Mr. Coleman to demonstrate that the USPS's proffered reason is pretextual, "either

---

[16] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986).

[17] *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

[18] *Hebbe v. Plier*, 627 F.3d 338, 342 (9th Cir. 2010); *Pagayon v. Holder*, 675 F.3d 1182, 1188 (9th Cir. 2011).

[19] 42 U.S.C. § 2000e-2(a)(1).

[20] *Chuang v. U. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

[21] *Id.* at 640 (citing *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1148 (9th Cir.1997)); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *McGinest*, 360 F.3d at 1136.

directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."[22]

The USPS argues that while Mr. Coleman may have demonstrated the first three elements of a prima facie case, he has not demonstrated the fourth, as R.B., the white male who was hired instead of Mr. Coleman, was not similarly situated to Mr. Coleman because R.B. was better qualified for the position.[23]   In the alternative, the USPS argues that it has presented legitimate, non-discriminatory reasons for the hiring decision and that Mr. Coleman has not demonstrated those reasons to be pretextual.

For purposes of this motion, the Court has assumed that Mr. Coleman has demonstrated all four elements of a prima facie case of employment discrimination under Title VII.   The Court's analysis is therefore focused on the USPS's proffered reasons for hiring R. B. instead of Mr. Coleman and Mr. Coleman's assertions as to why those proffered explanations are unworthy of credence.

### A. Employer's Reasons.

The USPS asserts that "[Mr.] Coleman's lack of experience relative to other candidates is a legitimate, non-discriminatory reason for his non-selection."[24]

The record demonstrates that at the time the USPS reviewed applications and hired for the Retail Specialist position, R.B. had been successfully working as a Retail

---

[22] *Texas Dep't of Cmty. Affairs*, 450 U.S. at 256.

[23] Docket 54 at 5.

[24] Docket 54 at 7 (citing *Look v. Donahoe*, 456 Fed. Appx. 695, 696 (9th Cir. 2011) (unpublished)).

Specialist position for several months. He had also completed another detail in that same position five years previously. Mr. Rampmeyer supervised R.B. in those positions and has stated under penalty of perjury that "[R.B.] performed his duties very successfully[,] . . . demonstrated a good grasp of the job responsibilities and worked well with district Postmasters and retail unit managers."[25] He added that R.B. "had performed well" in his prior 2003 detail to that position.[26] Mr. Rampmeyer stated that R.B. had over a decade of service "in Marketing/Retail positions, giving him in-depth knowledge of the retail side of the business."[27] Thus, R.B. had a substantial, immediate history of good performance in the exact position at issue in this case. R.B. received a high score (5 out of 5 points) when asked about his experience with window operations[28] and included the two Retail Specialist positions on his list of prior positions held on his written application.[29] In addition, R.B.'s application identified his experience as a Passport Acceptance Agent and as an Accounting Technician.[30]

Mr. Coleman had a more distant history of good performance in positions different from, but arguably related to, the Retail Specialist position. His written application mentioned his USPS retail and window experience only briefly, in ways that indicated he had primarily been involved in internal retail, rather than external window

---

[25] Docket 54-1 at 2 (Ex. A, Rampmeyer Decl. ¶ 8).

[26] Docket 54-1 at 2 (Ex. A, Rampmeyer Decl. ¶ 8).

[27] Docket 54-1 at 2 (Ex. A, Rampmeyer Decl. ¶ 8).

[28] Docket 54-1 at 121 [Bates #00121].

[29] Docket 54-1 at 21-22 [Bates #00124-25].

[30] Docket 54-1 at 19-20 [Bates #00122-23].

operations,[31] and did not include any window or retail experience in his list of prior positions held.[32] Nor did Mr. Coleman's written application include any reference to positions he had held involving passports or finance.[33] At the interview, Mr. Coleman scored low (2 out of 5 points) on his response to the question "What is your experience with window operations?"[34] Mr. Rampmeyer described Mr. Coleman's prior USPS experience as "concentrated in Finance/Accounting and Management/Purchasing" and indicated that Mr. Coleman's limited retail experience put him at a disadvantage relative to a candidate with more experience in that area.[35]

R.B. also performed significantly better overall in the job interview conducted by Mr. Rampmeyer and Ms. Macy. Mr. Rampmeyer scored the candidates, apparently on a 125-point scale, and gave R.B. a score of 97 and Mr. Coleman a score of 72.[36] Mr. Rampmeyer specifically noted that Mr. Coleman scored a 3 out of 5 in communication, a skill he indicated was "very important in a Retail position because of the amount of

---

[31] Docket 54-1 at 12 [Bates #00115] ("As a Window Clerk I participated in selling and ordering retail products.").

[32] Docket 54-1 at 14 [Bates #00117-18].

[33] Docket 54-1 at 11-14 [Bates #00114-18]. In his application, Mr. Coleman referenced his experience helping friends and family members with passports and his personal non-USPS-related business experience, but he did not mention any experience in those areas arising from his employment with USPS.

[34] Docket 54-1 at 11 [Bates #00114].

[35] Docket 54-1 at 2 (Ex. A, Rampmeyer Decl. ¶ 9).

[36] Docket 54-1 at 17-18 (Ex. 3, R.B.); Docket 54-1 at 10-11 (Ex. 3, Coleman). The interview scoring sheet is a series of questions, with a numerical rating of the interviewee's response next to each question. A circled number at the bottom of the page indicates the total score earned. The Court's independent tally of the scores indicates that R.B. scored a 99, not a 97, but as 97 appears to be the number relied upon in making the employment decision, the Court uses that number in the discussion above.

time spent dealing with the general public and other persons outside the USPS."[37]  R.B. scored a 4.5 in that category.[38]

Given this evidence, the Court finds that Mr. Coleman's relative lack of retail experience, as compared to R.B., supports the USPS's decision to hire R.B. instead of Mr. Coleman.  Accordingly, the USPS has met its burden of demonstrating a legitimate, non-discriminatory reason for hiring R.B. instead of Mr. Coleman.

### B. Evidence of Pretext.

Mr. Coleman relies on circumstantial rather than direct evidence of pretext. "Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer."[39]  "Circumstantial evidence, in contrast, is evidence that requires an additional inferential step to demonstrate discrimination."[40] To create a genuine factual dispute, a plaintiff must present "specific and substantial" evidence of pretext.[41]  He cannot "simply show the employer's decision was wrong, mistaken, or unwise."[42]

Mr. Coleman makes several arguments to demonstrate that the USPS's stated reason for the employment decision was pretextual.  Specifically, he asserts that Darus

---

[37] Docket 54-1 at 2 (Ex. A, Rampmeyer Decl. at ¶ 9) (citing Docket 54-1 at 18 (Ex. 3)).

[38] Docket 54-1 at 2 (Ex. A, Rampmeyer Decl. at ¶ 9) (citing Docket 54-1 at 10-11 (Ex. 3)).

[39] *Dominguez-Curry*, 424 F.3d at 1038 (quoting *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1095 (9th Cir. 2005)).

[40] *Coghlan v. Am. Seafoods Co. LLC.*, 413 F.3d 1090, 1095 (9th Cir. 2005).

[41] *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998) (internal quotations and citations omitted); *cf. Hernandez v. Arizona*, 702 F. Supp. 2d 1119, 1126 (D. Ariz. 2010).

[42] *Dept. of Fair Empl. and Hous. v. Lucent Technologies, Inc.*, 642 F.3d 728, 746 (9th Cir. 2011).

Macy's involvement in the decision tainted it; that the USPS defamed him; that the USPS blacklisted him from receiving the promotion; and that his qualifications were superior. The Court addresses each argument below to determine if Mr. Coleman has raised a genuine dispute of material fact with regard to the USPS's proffered reason for the employment decision.

 i. *Darus Macy.*

For purposes of this motion, the Court accepts as true Mr. Coleman's assertion "that Darus Macy had input in selecting the successful candidate for the Retail Specialist position."[43] Mr. Coleman argues that "Darus Macy tainted the selection process."[44]

Mr. Coleman asserts that in *Dominguez-Curry v. Nevada Transportation Department*, the Ninth Circuit "held that direct evidence of discriminatory animus involving one of two decisionmakers was sufficient evidence for the plaintiff to survive summary judgment."[45] *Dominguez-Curry* involved direct evidence of discrimination: the plaintiff's supervisor had made numerous explicitly sexist comments that "overtly exhibit[ed] his hostility to women in the workplace[,]" such as "women have no business in construction" and "women should only be in subservient positions[.]"[46]

Here, Mr. Coleman has presented no direct evidence of discrimination; all of the evidence he cites is circumstantial. He asserts that Darus Macy tainted the selection

---

[43] Docket 56 at 12.

[44] Docket 56 at 11.

[45] Docket 56 at 11 (citing *Dominguez-Curry*, 424 F.3d 1027 (9th Cir. 2005)).

[46] *Dominguez-Curry*, 424 F.3d at 1038.

process because she "was aware of all the details concerning the Plaintiff's EEO activities, harassment charges and demotion."[47]  But Mr. Coleman does not provide any evidence that this knowledge may have influenced Ms. Macy's participation in the hiring for the Retail Specialist position.  He also asserts that "Darus Macy has a history with the Plaintiff[,]" citing to an affidavit he submitted with his opposition to the first motion for summary judgment.[48]  That affidavit describes several interactions Mr. Coleman had with Ms. Macy, but nowhere indicates or even implies that Ms. Macy's hiring decisions were in any way influenced by Mr. Coleman's race or prior EEO activity.[49]  Thus, there is no basis for the Court to make that "additional inferential step" that would be necessary to find a genuine issue of fact regarding Ms. Macy's alleged discriminatory or retaliatory intent.[50]

Thus, Mr. Coleman has not presented evidence that race-based discrimination or retaliation influenced Ms. Macy's participation in the hiring decision.  The Court therefore finds that Ms. Macy's participation in the selection of the Retail Specialist is not specific and substantial evidence that raises a genuine dispute of material fact with regard to the legitimacy of the USPS's stated reasons for the employment decision.

---

[47] Docket 56 at 12 (citing Bates # 509 (Darus Macy's signature on the February 2008 settlement agreement)).

[48] Docket 56 at 12 (citing Docket 35).

[49] *See* Docket 35.

[50] *Coghlan v. Am. Seafoods Co. LLC.*, 413 F.3d 1090, 1095 (9th Cir. 2005).

*ii.    Defamation.*

Mr. Coleman devotes a section of his opposition to presenting the elements of a defamation claim under Alaska state law.[51]   However, Mr. Coleman's Complaint, even liberally construed, does not include a claim for defamation,[52] and Mr. Coleman cannot maintain claims that are not identified in the Complaint.[53]   Moreover, the attempted defamation claim involves Mr. Coleman's February 2008 demotion, a matter entirely distinct from the hiring decision involving Mr. Coleman and R.B.   This Court has previously held that Mr. Coleman cannot maintain claims arising from the demotion, as the demotion was part of a confidential and voluntary final settlement agreement he entered into with the USPS.[54]

Accordingly, the Court finds that the alleged defamation is not specific and substantial evidence that raises a genuine dispute of fact with regard to the USPS's stated reasons for the Retail Specialist hiring decision.

---

[51] Docket 56 at 12-17.

[52] *See* Docket 1.

[53] *See Bell A. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (Federal Rule of Civil Procedure 8(a)(2) requires a complaint to "give the defendant fair notice of what [each] claim is and the grounds upon which it rests[.]") (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  In addition, even if Mr. Coleman had asserted a defamation claim in his Complaint, that claim would be time-barred, as Alaska has a two-year statute of limitations for defamation actions.  AS § 09.10.070.  The facts giving rise to Mr. Coleman's attempted defamation claim occurred, at the latest, in February 2008, which means that he would have needed to assert those claims by February 2010; but he did not file the Complaint until January 18, 2011.

[54] Docket 48 at 21.

*iii. Blacklisting.*

Mr. Coleman argues that the USPS blacklisted him from receiving promotions, relying on the following form list of candidates provided by the USPS as evidence:[55]

**Candidates (No Ranking)**

| | Candidate ⇕ | Personnel Number ⇕ | Read ⇕ | Further Assignment ⇕ | Candidate Status ⇕ | Application ⇕ | Process ⇕ | Application Source |
|---|---|---|---|---|---|---|---|---|
| ▽ | | | | | | | | |
| ▨ | George Coleman / ANCHORAGE AK 99524-1561 | | No | No | Rejected | 51932426 | Selection | |
| ▨ | C████ S████ / Kernersville NC 27284 | 03325842 | No | Yes | Rejected | 51933812 | Selection | |
| ▨ | R████ B████ / Bend OR 97708 | | No | No | To Be Hired | 51949561 | Offer Phase | |
| ▨ | M████ N████ / ANCHORAGE AK 99519-0655 | 02936699 | No | No | Rejected | 51949803 | Selection | |
| ▨ | G████ S████████ / ANCHORAGE AK 99504-4680 | | No | Yes | Rejected | 51955365 | Selection | |

◻◻ Page [1] of 1 ◻◻

[Create Activities] [Process Activities] [Overview] [Candidate Profile] [Set as Read] [Set as Unread]

The list appears to have been generated by the USPS's internal hiring database and lists the five applicants for the Retail Specialist position. Mr. Coleman alleges that this form is "discriminatory."[56] Specifically, Mr. Coleman finds the "No" designation for him under the "Further Assignment" heading to be problematic. He asserts that "No one explained why the Plaintiff was designated 'No' for 'Further Assignment' or how to

---

[55] Docket 54-1 at 5 (Ex. 2) (names of non-parties redacted for privacy).

[56] Docket 56 at 18.

achieve a 'Yes' designation" and argues that "a 'No' designation under 'Further Assignment' denies Plaintiff the same detail opportunity that [R.B.] received[.]"[57]

It is not clear from the record currently before this Court what "Further Assignment" means in this context. However, of the five candidates listed, three received a "No" in that category—including R.B., who ultimately received the Retail Specialist position. Thus, receiving a "No" designation under "Further Assignment" does not appear to have been prejudicial to an applicant's eligibility for the Retail Specialist position.

Mr. Coleman also asserts that the following comments, which were made at oral argument on the first Motion for Summary Judgment by Edward Wilson, counsel for the USPS, are evidence of retaliation for prior EEO activity:

> If you just look at it in context, even if there was a promise that he could be reconsidered, we only had a five- or six-month track record here of what went on to—so it's hard for him to establish that he was never going to get a position. I mean, if I'm a manager, I'm going to say the same thing, as, wait a minute, we just had this guy demoted for harassment; I need some time to lay—kind of marinate in that position and see how it goes before I'm going to even consider him for . . . a promotion.[58]

However, in making these remarks, Mr. Wilson was not quoting any statement that had been made by the USPS or any document in the record; he was merely supporting a legal argument with his own impressions. It is well-established that statements of

---

[57] Docket 56 at 18.

[58] Docket 47 at 35 (Oral Argument Tr.).

counsel made at oral argument "are not evidence, and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment."[59]

     *iv.       Superior Qualifications.*

As the Court has found the above arguments unpersuasive, Mr. Coleman's pretext argument rests solely upon his qualifications, which he argues are superior to R.B.'s. The Ninth Circuit has held that it can be appropriate to find pretext solely on the basis of qualifications where the "plaintiff's qualifications [are] clearly superior to the qualifications of the applicant selected."[60] While they need not "be so apparent as to jump off the page and slap us in the face to support a finding of pretext[,]"[61] there must still be a "pronounced difference between [the applicants'] qualifications" to raise a genuine dispute of fact.[62] However, "an employee's subjective personal judgments of [his] competence alone do not raise a genuine issue of material fact."[63]

---

[59] *Smith v. Mack Trucks, Inc.*, 505 F.2d 1248, 1249 (9th Cir. 1974) (citing *James v. The H.M.S. Port Lyttleton Port Line Limited*, 51 F.R.D. 216, 218 (E.D.Pa. 1971)).

[60] *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1194 (9th Cir. 2003) (quoting *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1492 (9th Cir.1995)).

[61] *Raad*, 323 F.3d at 1194 (citations omitted).

[62] *Raad*, 323 F.3d at 1194.

[63] *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270 (9th Cir. 1996) (citing *Schuler v. Chronicle Broadcasting Co., Inc.*, 793 F.2d 1010, 1011 (9th Cir.1986)). Mr. Coleman cites to *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 660 (9th Cir. 2002), asserting that in that case, the Ninth Circuit "came close to saying that the employee's self-assessment might be sufficient to establish" a prima facie case under Title VII. Docket 56 at 8. Mr. Coleman has correctly characterized the holding in that case: that court found that the plaintiff's self-assessment, considered together with other evidence the plaintiff had presented, was sufficient to meet the "minimal prima facie burden" of establishing his qualifications. *Aragon*, 292 F.3d at 660. However, here this Court has assumed for purposes of this motion that Mr. Coleman met his prima facie burden in this case, thereby creating a presumption of discrimination, and began its analysis at the next step of the process. *See infra at* 6.. The USPS has proffered a legitimate non-discriminatory reason for its decision; Mr. Coleman now bears the burden of presenting specific, substantial evidence that the USPS's reason is not credible. Thus, in

The Court's role in this action is to determine if the USPS's decision not to hire Mr. Coleman for the Retail Specialist position was influenced by an improper racial or retaliatory motive. "Courts only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless."[64] Thus, in deciding this motion, the Court has considered only the information available to the individuals who made the hiring decision to determine if their decision had an honest basis. Information that was not before the deciding individuals at the time the decision was made is not relevant.

Mr. Coleman has included with his opposition certain evidence that was not available to the USPS at the time the hiring decision was made. For example, Mr. Coleman's application for the Retail Specialist position lists only five positions he occupied within the USPS, dating back to 1993, but Exhibit 2 to Mr. Coleman's opposition lists twenty positions, dating back to 1978. As the more extensive list was not part of the USPS's consideration of his candidacy for the Retail Specialist position, and as Mr. Coleman has not demonstrated that the USPS was aware of his entire employment history, the Court has not considered that evidence.

Mr. Coleman argues that the deciding individuals based their selection on an incorrect assessment of his qualifications and "inflated [R.B.'s qualifications] to justify

---

*Aragon*, the Ninth Circuit was careful to distinguish between the burdens of proof at each stage, and made it clear that when an employee was called upon to present "specific and substantial evidence showing that the employer's reasons for terminating him were false or discriminatory," the employee's self-assessment "is not enough to raise a genuine issue of material fact." *Aragon*, 292 F.3d at 660.

[64] *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) (quoting *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733 (7th Cir. 2001) (internal quotation marks omitted).

his selection over the Plaintiff."[65]    Specifically, Mr. Coleman asserts that Mr. Rampmeyer's representation that he determined Mr. Coleman to be less qualified because he "had only worked as a Distribution Clerk, and had no window, passport, or finance experience" was false.[66]  Mr. Coleman argues that this assertion overlooked his experience serving "as a Window Clerk, Express Mail Clerk and [detail] as Downtown Supervisor Station & Branches and Downtown Superintended Station & Branches, which was the only office issuing passports at the time," and his time spent "as Management Representative Stamp Destruction Committee, a position that oversaw the dissemination and reconciliation of the entire state[']s retail and philatelic products."[67] As discussed above, the Court has reviewed the information that the deciding individuals had available to them in evaluating Mr. Coleman's qualifications and determined that it supports the USPS's explanation that Mr. Coleman lacked extensive experience in retail operations.[68]

Mr. Coleman also asserts that his education level "far exceeds" R.B.'s, as he holds a Bachelor of Arts degree in Psychology, with a minor in Business, and an Associate of Arts degree, while R.B. has a high school degree.[69]  However, the

---

[65] Docket 56 at 9.

[66] Docket 56 at 9 (citing Bates # 00083).

[67] Docket 56 at 9.  Mr. Coleman also states that he "submitted numerous Marketing eIdeas for review.  With some being adopted and others placed under consideration."  Docket 56 at 10. However, the only evidence Mr. Coleman cites to support this statement is Bates # 00066.  That document is a record that Mr. Coleman submitted an eIdea but does not indicate how it was considered or if it was accepted.

[68] *See infra at* 6-9.

[69] Docket 56 at 8.

qualifications identified in the Retail Specialist job posting did not include any educational requirement; they were focused on knowledge and practical skills.[70] Thus, if Mr. Coleman had learned any particularly relevant skills through his education, those skills would have been detailed in his job application and evaluated within the context of the position's requirements. Accordingly, Mr. Coleman's superior education level does not automatically render him more qualified than R.B.

Mr. Coleman also argues that R.B.'s qualifications were "overrated."[71] Yet as discussed above, R.B. had, at the time of his application, served two details in the very position for which he was applying, with a good record of performance; scored significantly higher in his interview; and submitted an application that reflected extensive experience in the retail area.[72] Thus, based on the information provided to the interviewers, R.B. appears to have been the more qualified applicant for the Retail Specialist position.

"The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."[73] This Court finds that Mr. Coleman has not met his burden of presenting substantial, specific circumstantial evidence that USPS's asserted reasons for failing to promote him to the Retail Specialist position were pretextual. Thus, he has failed to raise a genuine

---

[70] *See infra* at 3-4.

[71] Docket 56 at 10.

[72] *See infra* at 6-9.

[73] *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

issue of material fact with regard to his failure to promote claim. Summary judgment is therefore granted to the USPS on the Retail Specialist claim.[74]

## CONCLUSION

For the foregoing reasons, the defendant's Second Motion for Summary Judgment at Docket 54 is GRANTED. Accordingly, the final pretrial conference and jury trial are VACATED. The Clerk of Court is directed to enter judgment for the defendant.


Dated at Anchorage, Alaska this 24th day of May, 2013.

*/s/ Sharon L. Gleason*
United States District Judge

---

[74] It is clear from Mr. Coleman's long history of service with the USPS, which is filled with many commendations for work well done, that Mr. Coleman was a valued employee. The fact that this Court has determined that Mr. Coleman was not the target of unlawful discrimination or retaliation does not detract from the significant contributions he made to the USPS.